UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA      :
     :
v.      :      CASE NO. 2:11-cr-97-FtM-99SPC
     :
JUDE SEREME,
a/k/a "Poppie,"
a/k/a "P-O"

**UNITED STATES' RESPONSE TO DEFENDANT
SEREME'S MOTION TO SUPPRESS EVIDENCE
AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW, the United States of America, by and through Robert E. O'Neill, United States Attorney, and Jesus M. Casas, Assistant United States Attorney, hereby files this response in opposition to Defendant Sereme's Motion to Suppress Evidence (Doc. 120), and would state the following:

**I.**      **Factual Background**

     **a.**      **CELL SITE ACTIVATION AUTHORIZATION**

On December 8, 2010, Florida Department of Law Enforcement Special Agent (S/A) Ronnie Austin applied to Lee County Circuit Judge Mark A. Steinbeck, and received authorization for cell site activation locations for cellular telephone number (239-222-5448) (hereafter the "target telephone."), whose service was provided by Sprint. Based upon the affidavit of S/A Austin, Judge Steinbeck issued an Order authorizing the receipt of such cell site activation locations for the target telephone. As indicated in the affidavit, the target telephone was believed to be used by the defendant, Jude Sereme (hereafter "Sereme"). However, the subscriber record for the telephone number listed Latora Brown with a Miami address as the subscriber. On or about December 8, 2010, S/A Austin began to receive cell site locations for the target telephone.

Cell site locations for the target telephone were received based upon S/A Austin accessing Sprint's law enforcement website portal and setting up the parameters for which the cell site information would be received.  The cell site information is capable of being received at different time intervals, every five minutes being the smallest interval. On or about December 9, 2010, surveillance was conducted on the Linda Loma subdivision of Fort Myers, Florida after information was received that indicated that the defendant was in the area.  As a result of the surveillance, a red Ford Edge, Florida tag R879LL, owned by Avis/Budget, was located at 16860 Carmen Avenue.  The red Ford Edge was rented by Marie Pierre of Miami, Florida.

On December 10, 2010, Federal Bureau of Investigation (FBI) S/A Ryan Davis was contacted by S/A Austin who advised that the target telephone had been at a particular Walmart in Fort Myers, Florida.  S/A Davis then contacted Walmart's Loss Prevention employee who allowed S/A Davis to view surveillance video that showed Sereme and co-defendant Rick Jean purchasing items and leaving the store.  The cameras showed Sereme getting into a red Ford Edge, similar to the rental vehicle previously identified in the Linda Loma subdivision.

S/A Davis contacted Avis/Budget again and was advised that Marie Pierre had returned the red Ford Edge and had obtained a silver Ford Edge.  This information was provided to S/A Davis prior to December 20, 2011.

**b.      TRAFFIC STOP ON DECEMBER 20, 2010**

On December 20, 2011, S/A Davis was advised that the target telephone was traveling from the Fort Myers, Florida area to the Miami, Florida area.  Later that evening, S/A Davis also learned that the target telephone was returning in the direction of the Fort Myers, Florida area.  As a result, S/A Davis contacted other law enforcement officers in an effort to locate the vehicle that contained the target telephone and establish probable cause for a traffic stop of the occupants.

On December 20, 2011, the cell site location data for the target telephone was being provided to S/A Austin approximately every five minutes.  As the target telephone appeared to be traveling in a motor vehicle, the limitations of the cell site information became apparent.  During the time frame before the next update to the location of the target telephone, law enforcement was unaware of the exact location of the target telephone.  An attempt was made to locate the vehicle with the target telephone in Collier County, but it was not successful, due to the delay in receiving location data.

As a result of the limitations of the cell site data, S/A Davis decided to have law enforcement converge on the roads that lead to the Linda Loma subdivision, namely Gladioulus and Summerlin Boulevards.  With the suspicion that the target telephone would be located in the silver Ford Edge, such information was relayed to Lee County Sheriff's Office Lieutenant (Lt.) Pete Hedrick and Detective Stephen Kirkby.  The vehicle was located by Detective John Armato who relayed the information to Lt. Hedrick.  Lt. Hedrick was able to locate the suspect vehicle and began to follow it for approximately one mile and a half from Gladiolus to Bass Road.  Lt. Hedrick observed the front driver side and passenger windows of the vehicle to have illegal tint, as he was unable to see the occupants. Lt. Hedrick paced the vehicle and determined that it was also speeding.  As a result, Lt. Hedrick conducted a traffic stop of the vehicle.

Upon the vehicle being stopped, Lt. Hedrick made contact with the driver of the vehicle, Johnny Pierre (Pierre).  Lt. Hedrick immediately smelled the strong odor of marijuana emanating from the vehicle.  Lt. Hedrick had Pierre step out of the vehicle and they both went to the rear of the vehicle.  Pierre admitted to speeding based upon his son having to use the restroom.  LCSO Detective (Det.) Stephen Kirkby also arrived within a minute or two and made contact with the front seat passenger, Sereme, the defendant.  A minor was also seated in the back seat of the vehicle.  Det.

Kirkby could also smell a strong odor of marijuana emitting from the vehicle.  Det. Kirkby spoke with Sereme and asked him to provide the rental agreement.  The defendant provided the agreement.

Det. Kirkby then spoke with Pierre about the vehicle and Pierre admitted that he had tinted the windows himself because he did not want people looking in his vehicle.  Pierre was also asked about the strong odor of marijuana and admitted that they had been smoking marijuana in the vehicle and that there might still be some present.  Lt. Hedrick then asked Pierre if he could check the vehicle and Pierre agreed.  During the contact with Pierre, Lt. Hedrick did a cursory pat down of Pierre.  Lt. Hedrick also did a cursory pat down of Sereme before beginning to search the vehicle.

At that point, Sereme and the minor joined Det. Kirkby  while Lt. Hedrick conducted a search of the interior of the vehicle.  During this contact with Sereme, Det. Kirkby could smell the odor of marijuana coming from Sereme's person as they spoke about different topics.  Lt. Hedrick searched the vehicle for approximately 27 minutes and located marijuana residue in the front passenger compartment.  Upon the arrival of an additional law enforcement officer, Det. Kirkby made contact with Lt. Hedrick who was still searching the vehicle.  Lt. Hedrick believed that Sereme probably had the contraband on him.  Det. Kirkby indicated he was going to search Sereme.

Det. Kirkby then walked away from the vehicle and made contact with Sereme.  Det. Kirkby asked Sereme if he had anything on him and Sereme answered in the negative.  Det. Kirkby, standing next to Sereme, then tapped on  the surface of the patrol vehicle and Sereme assumed a search position.  This position was assumed by Sereme without any direction by Det. Kirkby.  Det. Kirkby then conducted an exterior tactile search of Sereme.  Because Sereme was very heavy set and his pants were tight, Det. Kirkby manipulated them in order to conduct a more thorough search.  Det. Kirkby was able to feel something poking out of Sereme's underwear.  Det. Kirkby then asked Sereme to turn around and unbutton his pants because they were too tight and a proper search could

not be conducted.  Det. Kirkby had Sereme pull his pants down which exposed his underwear.  After checking between Sereme's upper thigh area, Det. Kirkby then checked Sereme's buttocks area from the exterior.  Neither Sereme's genitalia or his buttocks were exposed to Det. Kirkby until he pulled Sereme's underwear back, revealing Sereme's buttocks only to Det. Kirkby, and observed suspect cocaine in Sereme's buttocks.  Sereme was then placed in handcuffs away from the view of the minor and after putting on gloves, Det. Kirkby recovered three tied off baggies containing presumptive cocaine.

Following his arrest, Sereme was lodged at the Lee County Jail.  Sereme participated in recorded conversations with Pierre and Rick Jean while he was incarcerated.  Those conversations were knowingly recorded based upon a warning that was provided to inmates upon making such a call.

### c.    AUTHORIZATION TO INTERCEPT COMMUNICATIONS

On July 12, 2011, S/A Davis obtained authorization from the Honorable John E. Steele  to intercept the electronic and wire communications occurring over cellular telephone number (239) 384-1052, a phone believed to be used by defendant Rick Jean.

In summary, the affidavit in support of the application for authorization to intercept the wire and electronic communications contained background information provided by three confidential informants, surreptitiously recorded conversations between a confidential informant and Rick Jean, descriptions of physical surveillance, historical drug activity of Sereme and others, as well as their criminal history.  The affidavit did reference the traffic stop of the defendant which resulted in the seizure of cocaine, and the subsequent jail calls between the defendant and other individuals.  *See* Defendant's Motion, Attachment A, ¶ 20, 21, 22, 29 and 29A.  Wire and electronic communications of Sereme and others were obtained during the authorized period.

On August 12, 2011, S/A Davis obtained authorization from the Honorable John E. Steele to intercept the wire communications occurring over cellular telephone number (239) 384-1052, a phone believed to be used by defendant Rick Jean, and (754) 244-3916, a phone believed to be used by co-defendant Neheme Ductant.

In summary, the probable cause in support of the application for authorization to intercept the wire and electronic communications contained information provided by three confidential informants, intercepted wire and electronic communications occurring over (239) 384-1052, descriptions of physical surveillance, historical drug activity of the defendant and others and their criminal history. The affidavit did reference the traffic stop of the defendant which resulted in the seizure of cocaine, and the subsequent jail calls between the defendant and other individuals. *See* Defendant's Motion, Attachment B, ¶ 21, 22, and 23. Wire communications of Sereme and others were obtained during the authorized period.

On September 28, 2011, Sereme and nine other co-defendants were indicted by a Grand Jury in the Middle District of Florida for violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(iii) and 846. Doc. 3. Sereme was charged in Count One of the Indictment with having conspired to manufacture, possess with intent to distribute and distribute 28 grams or more of cocaine base and in Count Three with possession with intent to distribute cocaine on or about December 20, 2010. *Id.*

## II.    DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

On February 9, 2012, Sereme filed a Motion to Suppress Evidence (Doc. 120), and as grounds for his motion, the Defendant alleged that the traffic stop was unlawful, the search of the defendant was an unlawful strip search, the detention of the defendant was unlawful, and that the Title III intercept affidavits, which incorporated the results of the search of the defendant on

December 20, 2010 and his jail conversations, lacked probable cause when these allegedly unlawfully obtained items were removed.  Doc. 120.

III.    ANALYSIS AND MEMORANDUM OF LAW

   A.    **Defendant Sereme Has No Standing to Challenge the Cell Site Activation Authorization**.

Sereme lacks standing to challenge the cell site activation authorization and implementation relating to the target telephone because Sereme has neither pled nor proven that he had a property interest in the target telephone or a reasonable expectation of privacy associated with the location of the target telephone.

   1.    **Sereme Has Failed to Demonstrate that He Had a Property Interest in the Target Telephone**

Defendant Sereme lacks standing to challenge the cell site activation authorization and implementation relating to the target telephone because Sereme has neither pled nor proven that he had a property interest in the target telephone associated with the location of the target telephone.

In *United States v. Jones,* 132 S.Ct. 945, the Supreme Court held that the government's installation of a GPS tracking device on a vehicle and its use of that device to monitor the vehicle's movements without a valid warrant was a search in violation of Jones' rights.  132 S.Ct. at 949. However, *Jones,* upon which Sereme relies, is factually and legally distinguishable from the instant case.

In *Jones*, the vehicle that was the subject of the installation of the tracking device was acknowledged by the Government to be exclusively driven by Jones and was registered to Jones' wife.  *Id.* at 949, FN 2.  Consequently, the Court concluded for purposes of standing, that Jones, while not the owner of the vehicle, had property rights equivalent to that of a bailee.  *Id.*  Unlike *Jones*, that preliminary question has not been resolved here by acknowledgment of the United States

or more importantly, proof by Sereme.

It is well established that in order for a defendant to move to suppress evidence, he must have standing. *United States v. Eyster*, 948 F.2d 1196, 1208-09 (11th Cir. 1991). A defendant has the burden of showing standing under the Fourth Amendment standard. *United States v. Brazel*, 102 F.3d 1120, 1147 (11th Cir. 1997). Such a motion must also "in every critical respect, including allegations of standing, be definite, specific, detailed and non-conjectural to enable the court to conclude that a substantial claim is presented." *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir.) *cert denied*, 474 U.S. 952, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985).

On both occasions when the target telephone was geographically located by law enforcement pursuant to the Court's Order (the Walmart on or about December 10, 2010 and December 20, 2010) the defendant was in the company of another individual (Rick Jean at Walmart and Johnny Pierre on December 20. 2010). As a result, it is unknown which of these individuals had at least a possessory interest in the target telephone.

On or about December 10, 2010, the target telephone was not observed in the presence of Sereme or Rick Jean. Consequently, it is unknown which of these two individuals had the target telephone. On December 20, 2010, the target telephone was not recovered from the person of Sereme or Johnny Pierre. Consequently, because the target phone was registered to a third party and on both occasions was in the presence of a third party, Sereme has failed to prove that he has standing to challenge the obtaining of information related to the target telephone's location. The United States does not have to prove Sereme had a property interest in the target telephone on either date, Sereme has that burden. Sereme fails to allege or prove that he had any property interest in the target telephone, therefore he has no standing to suppress the use of the geographic locator information for the target telephone.

2. **Sereme Also Has No Standing Because He Had No Reasonable Expectation of Privacy in the Location of the Target Telephone.**

Sereme has no standing to seek suppression of the cell site locator information related to the target telephone pursuant to a *Katz*[1] reasonable expectation of privacy analysis. While Sereme cites to *Jones* in support of his position regarding the unlawfulness of the cell site locator information, Sereme never alleges that a trespass occurred, which the holding of *Jones* is based upon, or that Sereme had a reasonable expectation of privacy in the location of the target telephone. Sereme does contend that "the interception of [Sereme's] movements by the use of the GPS device constituted a warrantless search in violation of the Fourth Amendment." Defendant's Motion at 9. However, Sereme fails to explain why he maintains that opinion. Regardless of Sereme's failure to explain either a trespass or a reasonable expectation of privacy, Sereme does go on to discuss the concurring opinion of Justice Alito. However, in doing so, Sereme never addresses the *Katz* analysis, which is the heart of Justice Alito's opinion. *Jones*, 132 S.Ct. at 957 - 964. Under either the *Jones* trespass analysis or the *Katz* reasonable expectation of privacy analysis, Sereme has no standing.

a. **The Monitoring Of The Cell Site Location Of The Target Telephone Did Not Require A Trespass.**

The target telephone was manufactured with a built in capability to have its location monitored by the service provider. Law enforcement was not required to enter the target telephone or attach anything to the telephone to monitor its general location. Rather, Sprint, as the service provider, provided law enforcement access upon receiving a court order authorizing receipt of such information. As a result, the target telephone went to its user, whoever that was, with the built-in capability to be monitored by a third party, either a service provider or law enforcement.

---

[1]389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Consequently, the trespass analysis of *Jones* does not apply to the cell site location information associated with the target telephone.

      **b.**     **Sereme Did Not Have A Reasonable Expectation of Privacy In the Location of the Target Telephone.**

In order to assert a violation of the Fourth Amendment, a defendant must establish that he had a legitimate expectation of privacy in the place that was searched or that his Fourth Amendment rights were violated. *See Rakas v. Illinois*, 439 U.S. 128, 148-49. (1978); *Brazel*, 102 F.3d 1120, 1147-48 (11th Cir. 1997). The rationale being that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas*, 439 U.S. at 133-34 (*quoting Alderman v. United States*, 394 U.S. 165, 174 (1969)). Therefore, "a person who is aggrieved by an illegal search . . . only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134.

A legitimate expectation of privacy exists only when a defendant can demonstrate that his subjective expectation of privacy is one that "'society is prepared to recognize as reasonable.'" *United States v. Ford*, 34 F.3d 992, 995 (11th Cir. 1994)(*quoting Katz v. United States*, 389 U.S. 347, 361 (1967)(Harlan, J., concurring)). In determining whether an individual's expectation of privacy is legitimate, the Supreme Court has adopted a two part analysis as first pronounced in *Katz*. That is, a defendant must have a subjective expectation of privacy in a place or thing, and society must be prepared to acknowledge that expectation as objectively reasonable. *Katz*, 389 U.S. at 361. (Harlan, J., concurring).

The Supreme Court has previously rejected claims of expectations of privacy where electronic tracking devices were placed in containers prior to the container being possessed by an individual and subsequently being monitored by law enforcement. *See United States v. Knotts*, 460

U.S. 276, 286, 103 S.Ct. 1081, 1087, 75 L.Ed.2d 55 (1983)); *United States v. Karo*, 468 U.S. 705, 712, 104 S.Ct. 3296, 3302, 82 L.Ed.2d 530 (1984).  As Justice Scalia noted in his opinion in *Jones,* "*Karo* accepted the container as it came to him, beeper and all, and was therefore not entitled to object to the beeper's presence, even though it was used to monitor the container's location." *Jones*, 132 S.Ct. at 952.

While Justice Scalia did not make any findings regarding  the reasonable expectation of privacy that Jones had in the location of his vehicle, Justice Alito, in his concurring opinion, did conclude that "relatively short term monitoring of a person's movements on public streets accords with expectations of privacy that our society has recognized as reasonable." *Jones*, 132 S.Ct. at 964 (Alito, S., concurring).   Justice Alito then added that "the longer term GPS monitoring in investigations of most offenses impinge[d] on expectations of privacy" and while not addressing a specific time frame, stated that "the line was surely crossed before the 4-week mark." *Id.*  Prior to *Jones*, monitoring of a beeper on public streets was held by the Court to not implicate a reasonable expectation of privacy. *See Knotts*, 460 U.S. at 281.

In the instant case, the target telephone was outfitted with cell site location capability by the manufacturer, not law enforcement.  Consequently, whoever used the target telephone did so with the capability to monitor its location already introduced.  Moreover, in having this capability, the information generated by the target telephone as to its location was being provided to a third-party, either a service provider or law enforcement.  Finally, the location information provided to law enforcement was the presence of the target telephone on public streets, a place where there is no reasonable expectation of privacy.  Consequently, Sereme had no legitimate expectation of privacy in the monitoring of the target telephone.

     **c.**     **No Search Occurred Which Resulted In the Location Of The Defendant On December 10, 2010.**

Because of the limitations of the cell site locator technology, law enforcement in the instant case was only generally aware of the location of the target telephone. That is, because the cell site location was only provided every five minutes and the target telephone appeared to be traveling in a motor vehicle, law enforcement could not precise exactly where the target telephone was located. As a result, when the target telephone passed Collier County, Florida without being located by law enforcement, S/A Davis decided to revert to traditional methods of law enforcement surveillance - namely visual observation. Consequently, law enforcement officers assisting S/A Davis were advised of the description of the suspect vehicle and the possible destination, the Linda Loma subdivision. With that information, law enforcement was able to locate the suspect vehicle and a traffic stop was subsequently conducted. Other than knowing that the target telephone was traveling back in the direction of Lee County, Florida from Miami, no specific information as to the location of the target telephone assisted law enforcement in conducting a traffic stop of the vehicle occupied by Sereme.

**B.      Even If Use of the Cell Site Locator Was a Search, It Was Reasonable Under the Fourth Amendment.**

Even if Sereme has standing to assert a Fourth Amendment challenge to the use of the cell site locator information for the target telephone, no Fourth Amendment violation took place. The Supreme Court, under its "general Fourth Amendment approach," examine[s] the totality of the circumstances" to determine whether a search . . . is reasonable under the Fourth Amendment." *Samson v. California*, 547 U.S. 843, 848 (2006)(internal quotation marks and citation omitted). Under such an analysis, the Court assesses the degree of intrusion upon the privacy of a person and the degree of necessity to advance legitimate governmental interests. *Id.*

In consideration of the Supreme Court's balancing test, the privacy interest in the location of a cellular telephone is de minimis. This is primarily because location data of the cellular

telephone is based upon latitude and longitude, and gives a proximate location of the telephone. Further information must be sought to know what if anything is associated with such data. For example, the use of Google mapping allows for more detail as to where the phone was in reference to land marks such as roads or in the instant case, a Walmart store. The cell site information does not advise who is in possession of the phone, what the possessor is doing, or any communication by the possessor; it merely provides the location of the telephone. It was only with the benefit of Walmart having its own recording surveillance camera that S/A Davis was able to observe Sereme and Rick Jean at the Walmart and the red Ford Edge in the parking lot. In the absence of the cell site locator information, the video footage may never have come to the attention of S/A Davis.

The location of the telephone in public could not be obtained by any less intrusive means because a telephone is capable of being concealed on an individual's person or in a vehicle. Unlike a vehicle that can be tracked with traditional surveillance methods, a cellular telephone is not readily observable and therefore the necessity of being able to track a telephone remains important. Obviously, tracking the telephone without corroboration that a particular suspect was in possession of it is of no value. The natural consequence of the limited information provided by a cell site locator is that law enforcement must try and locate the telephone and determine who is in possession of it. Such corroboration is often obtained by placing a phone call to the target telephone in the visual presence of law enforcement who would observe who is using the telephone. Consequently, the location of a cellular telephone and corroborating information generated from its location promotes the legitimate governmental interest of investigating individuals suspected of drug distribution. As a result, the balance is in favor of the Government as the intrusion is minimal and the necessity is great.

Additionally, the cell site locator information was used for a brief period of time. Depending

upon how it is analyzed, law enforcement either monitored the cell site location data for twelve days or two days.  Twelve days if you count from the date of authorization and activation until December 20, 2010.  Two days if you count the days which the United States intends to use information against Sereme.  Under either scenario, it is of the duration that Justice Alito might have contemplated in *Jones* to be "short term" and therefore not violative of a reasonable expectation of privacy.

### C. The Use Of The Cell Site Locator Without Obtaining a Probable Cause Warrant Was Conducted in Reasonable Reliance on a Court Order And Is Therefore Not Subject To The Exclusionary Rule.

The Fourth Amendment is silent concerning the enforcement of the right to be free from unreasonable searches and seizures.  *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011).  The Supreme Court accordingly created the exclusionary rule, a "prudential doctrine … to compel respect for the constitutional guaranty." *Id.* (internal quotation marks omitted).  The rule, however, is neither a personal right nor a right to "redress the injury occasioned by an unconstitutional search." *Id.* (internal quotation marks omitted).  Rather, its purpose is to deter future Fourth Amendment violations, and its application is limited "to situations in which this purpose is thought most efficaciously served." *Id.*

Real deterrent value therefore "is a necessary condition for exclusion, but it is not a sufficient one." *Id.* at 2427 (internal quotation marks omitted).  Any suppression analysis must also account for the exclusionary rule's "substantial social costs," which include "ignor[ing] reliable, trustworthy evidence bearing on guilt or innocence" and possibly setting a "criminal loose in the community without punishment." *Id.*  "[S]ociety must swallow this bitter pill when necessary, but only as a last resort." *Id.* (internal quotation marks omitted).  Thus, "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Id.*

The deterrence benefits of suppression depend on the culpability of the officers. *Id.*  When

officers show deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrence benefits are strong and usually outweigh the social costs. *Id.* "Indeed, the abuses that gave rise to the exclusionary rule featured intentional conduct that was patently unconstitutional." *Herring v. United States*, 555 U.S. 135, 143 (2009) (giving as examples officers breaking into homes without warrants or information that would justify warrants). But the Supreme Court has never applied the rule to exclude evidence "where police conduct was no more intentional or culpable" than that. *Id.* An error that "arises from nonrecurring and attenuated negligence is thus far removed from the core concerns" that led to the rule in the first instance. *Id.* When officers have an "objectively reasonable good faith belief that their conduct is lawful" or their conduct involves isolated negligence, "the deterrence rationale loses much of its force and exclusion cannot pay its way." *Davis,* 131 S. Ct. at 2427-28 (internal quotation marks omitted).

The Supreme Court most recently addressed the exclusionary rule and applied the requisite balancing in *Herring* and *Davis*. In *Herring*, the Court held that the rule does not apply when an unlawful arrest "was the result of isolated negligence attenuated from the arrest." 555 U.S. at 137. In *Davis*, the Court held that the rule likewise does not apply when officers "conduct a search in objectively reasonable reliance on binding judicial precedent." *Id.* at 2428. *Herring* and *Davis* accord with the Court's earlier exclusionary-rule decisions while again stressing, perhaps most forcefully yet, the limited circumstances under which a court should apply the rule. *See e.g., Illinois v. Krull*, 480 U.S. 340, 349-50 (1987) (rule does not apply when officers conduct warrantless administrative search performed in good-faith reliance on statute later declared unconstitutional); *Arizona v. Evans*, 514 U.S. 1, 15 (1995) (rule does not apply when officers reasonably rely on mistaken information in court database that warrant was outstanding); *Massachusetts v. Sheppard*, 468 U.S. 981, 991 (1984) (rule does not apply when warrant is invalid because judge forgot to make

clerical corrections to it); *United States v. Leon*, 468 U.S. 897, 922 (1984) (rule does not apply when police act under warrant that is invalid for lack of probable cause if they acted in objectively reasonable reliance on subsequently invalidated warrant).

Applying the requisite deterrence-value-versus-social-cost balancing to the facts in this case compels the conclusion that application of the exclusionary rule is unwarranted even if there had been a Fourth Amendment violation.

There is no (or minimal) deterrent benefit to suppressing of the cell site location data that was obtained by S/A Austin by way of a Court order.  The evidence that will be introduced at the suppression hearing will show that S/A Austin did not act with any deliberate, reckless, or grossly negligent disregard for the defendant's Fourth Amendment rights required for application of the rule. To the contrary, he obtained a Court Order authorizing the receipt of such information and acted in accordance with the Court's Order.

Against that backdrop of no (or minimal) deterrent benefit are the high social costs of suppressing the cell site location data of the target telephone.  Namely, the cell site location data allowed law enforcement to obtain video footage sufficient to link Sereme to the red Ford Edge and Rick Jean.  With the background information previously provided by confidential informants, law enforcement reasonably believed that Sereme and his co-conspirators would be traveling from Miami with cocaine.  The cell site location data of the target telephone narrowed law enforcement's search and allowed them to take enforcement actions consistent with the information received.

The defendant is a convicted felon indicted for conspiring to manufacture, possess with intent to distribute, and distribute 28 grams or more of cocaine base.  Doc. 3.  Additionally, pattern of travel from Fort Myers to Miami and then back to Fort Myers, along with the recovery of cocaine from Sereme's buttocks is "reliable, trustworthy evidence bearing on guilt or innocence."  <u>See</u>

<u>Davis</u>, 131 S. Ct. at 2427.  Suppression of the cell site location data accordingly would exact high social costs.

With no (or minimal) deterrent benefit on one hand and high social costs on the other, the Court should not apply the exclusionary rule to the instant case, even if there had been a Fourth Amendment violation.

**D.      The Traffic Stop of The Vehicle Occupied by Sereme Was Lawful**

The Fourth Amendment permits, irrespective of a police officer's subjective intent, the stop of a motor vehicle in the presence of probable cause to believe that a traffic infraction has occurred. *See Whren v. United States*, 517 U.S. 806, 810 (1996)(noting that subjective intent plays no role in ordinary, probable cause Fourth Amendment analysis).  Excessive speed and window tint violations are traffic infractions in the State of Florida.  *See* Florida Statute §316.183 (2012) (Speeding) and Fla. Stat. §316.2953 (Window Tint).  A traffic stop has been upheld under Florida law where an officer has a reasonable belief that the vehicle's window tinting is in violation of the statutory limits. *State v. Moore*, 791 So.2d 1246, 1249 (Fla. 1st DCA 2001).

In the instant case, the vehicle occupied by Sereme was reasonably believed by Lieutenant Hedrick to be speeding and to have unlawful window tint.  Lt. Hedrick paced the vehicle and observed the vehicle's windows.  Based upon Lt. Hedrick's observations of the vehicle while it was traveling, he conducted a traffic stop of the vehicle.  Pierre admitted to speeding and tinting the front driver and passenger side windows of the vehicle.  Consequently, the traffic stop was lawful.

**E.      Sereme Was Not Unlawfully Detained.**

Based upon the valid traffic stop for speeding and illegal window tint, the vehicle was lawfully stopped by Lt. Hedrick.  The stop of the vehicle occupied by Sereme was limited in

duration and was only prolonged as a result of other illegal activity, namely possession of marijuana, that was detected during the traffic stop.

While a traffic stop must be of a limited duration related to the circumstances leading to the stop, "articulable suspicion of other illegal activity" can result in the prolonging of such a stop. *United States v. Frazier*, 194 Fed. Appx 694, 700 (11th Cir. 2006) (quoting *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001)). A police officer can question a driver about the infractions that were the basis of the stop, request consent to a search of the car, and run other common database checks. *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991)(citing *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) and *Purcell*, 236 F.3d at 1278)). The smell of marijuana coming from a lawfully stopped vehicle is sufficient to alert law enforcement of criminal activity and justify further detention of the vehicle and its occupants. *See Bryan v. Spillman,* 217 Fed.Appx. 882, 885 (11th Cir. 2007) (citing *United States v. Garcia*, 592 F.2d at 259 (5th Cir. 1979)(holding that smell of marijuana emanating from a vehicle established reasonable suspicion justifying search)).

### 1.    Probable Cause To Search The Vehicle Was Obtained During The Traffic Stop.

Upon Lt. Hedrick making contact with the vehicle, he immediately smelled the strong odor of marijuana from within the vehicle. It is well established that the smell of marijuana emanating from a vehicle establishes probable cause for a search of the vehicle. *United States v. Griffin*, 109 F.3d 706, 708 (11th Cir. 1999)(holding that an officer has good reason justifying a warrantless search of a vehicle when he smells the strong odor of marijuana coming from the vehicle). Lt. Hedrick's probable cause relating to the smell of marijuana was corroborated on video by Pierre who admitted that they had been smoking marijuana on the drive up from Miami. Additionally, Pierre admitted that there might still be some marijuana in the vehicle. As a result, Lt. Hedrick had probable cause

to search the vehicle and prolong the duration of the traffic stop.  Consequently, Sereme was not

unlawfully detained during the search of the vehicle.

### 2. Consent to Search The Vehicle Was Obtained During The Traffic Stop.

While Lt. Hedrick spoke with Pierre about the contents of the vehicle, Lt. Hedrick requested

consent to search the vehicle.  Pierre agreed and Lt. Hedrick, shortly thereafter, began a search of

the vehicle.  According to the video, the search lasted approximately 27 minutes before Sereme was

searched.  "When the driver voluntarily consents to a search of his vehicle, 'the remainder of the

detention [is] consensual so long as the scope of the search [does] not exceed the consent given.'"

*United States v. Gonzalez*, 275 Fed. Appx. 930, 933 (11th Cir. 2008)(quoting *Purcell*, 236 F.3d at

1279 n.8).

As a result of Pierre providing consent to Lt. Hedrick to search the vehicle, Lt. Hedrick was

justified in searching the vehicle and prolonging the traffic stop.  The amount of time spent

searching the vehicle was not unreasonable and the consent provided by Pierre was not exceeded.

Consequently, Sereme was not unlawfully detained during the consensual search of the vehicle.

### F. Sereme Was The Subject Of A Lawful Search Which Resulted In The Recovery Of Cocaine Concealed Between His Buttocks And Underwear.

The search of Sereme was based upon probable cause to believe he possessed marijuana, in

light of the totality of the circumstances observed and sensed by Det. Kirkby.  Additionally, while

Det. Kirkby had probable cause to search Sereme, Sereme also consented to a search of his person.

Because Sereme was wearing tight fitting jeans, and Det. Kirkby felt something around his buttocks

when he did an exterior pat down of Sereme,  a thorough search could not be conducted without

Sereme unbuttoning his pants.  The manipulation of Sereme's clothing was done in such a way that

it was not visible to anyone other than Sereme and Det. Kirkby.  As a result, such a search was not

a constitutionally unreasonable search in violation of the Fourth Amendment.

**1.      Probable Cause To Search The Person Of Sereme
          Was Obtained During The Traffic Stop.**

While Sereme spoke with Det. Kirkby outside of the vehicle, Det. Kirkby detected the odor of marijuana coming from the person of Sereme.  Given that the rental vehicle occupied by Sereme had tint added to the windows, was traveling from a source city of narcotics, namely Miami, had the strong odor of marijuana emanating from its interior, Pierre admitted that there might be additional marijuana in the vehicle and Sereme had the odor of marijuana emanating from his person, Det. Kirkby had probable cause to conduct a search of Sereme.

**2.      Sereme Was The Subject of a Reasonable Search By
          Det. Kirkby.**

The reasonableness of a search must be balanced against "the need for the particular search against the invasion of personal rights that the search entails."  *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  Sereme was subjected to a reasonable search of his person and not an unconstitutional strip search.  Sereme relies upon *Lessley v. City of Madison, Indiana*, 654 F.Supp. 877, (S.D. Indiana 2009) in concluding that there was no justification for the search or the manner in which it was conducted.  Defendant's Motion at 7.  In *Lessley,* the Court held that the police officer did have probable cause to search Lessley because the officer had localized the smell of marijuana to the person of Lessley.  *Lessley* 654 F.Supp. at 897.  But, the Court invalidated the search of Lessley as an unlawful strip search.  *Id.* at 898.

The facts relating to the strip search of Lessley are completely distinguishable from what Det. Kirkby did during his search of Sereme.  In *Lessley*, the arrested individuals (three females) were taken to a fire station and had all of their clothes removed, with the exception of their bra and underwear.  *Id.* at 897-898.  Each arrested individual was then ordered to pull out their bra cup and

pull their underwear down below their knees and squat.  *Id.* at 898.

In the instant case, Det. Kirkby conducted an exterior search of Sereme and felt something around his buttocks.  Det. Kirkby then had Sereme step to the side of the police vehicle where he asked Sereme to unbutton his pants and pull them down just below his buttocks, exposing his underwear. After looking between Sereme's legs and noticing powder,  Det. Kirkby then stepped behind Sereme and pulled his underwear back, exposing the hidden, suspect cocaine.  In contrast to *Lessley*, Sereme was not asked to remove all of his clothing, and only had his underwear pulled back briefly for Det. Kirkby to peer down into.  Sereme never removed any of his clothing.

In *Bell*, the Supreme Court utilized a balancing test to decide the reasonableness of a search, including a strip search.  441 U.S. at 559.   Under the *Bell* balancing test, the need for a particular search is balanced against the invasion of personal rights caused by the search.  *Id.*  Factors to be considered include: 1) the location of the search; 2) the scope of the intrusion; 3) the manner in which the search was conducted; and 4) the justification for conducting the search.  *Id.*

In the instant case, Sereme was searched by Det. Kirkby on a public roadside, but Sereme could not be observed by others as there were three patrol vehicles blocking the view on one side and vegetation in the form of bushes and trees on the other side.  In fact, Det. Kirkby was sensitive to putting handcuffs on Sereme in light of the minor being present, after Det. Kirkby had located the suspect cocaine.  Consequently, Det. Kirkby took precautions to not unreasonably expose Sereme while he was searched.

The scope of the intrusion was limited to what was necessary to check what Det. Kirkby felt in Sereme's buttocks area.  After Sereme unbuttoned his pants and lowered them to his thighs, Det. Kirkby checked in front and in back to locate the object.  After confirming by touch that the object was in back, Det. Kirkby pulled Sereme's underwear back to where only Det. Kirkby could see, for

a brief moment, and then had Sereme pull up his pants.  This search was not a full blown strip search and was only minimally intrusive, based upon the location of the object that Det. Kirkby felt during the pat down search.

Det. Kirkby conducted the search in a responsible way by searching Sereme in a discrete fashion and not allowing others to view the search.  The search was conducted quickly, approximately 1 -2 minutes, and only briefly exposed the top and middle portion of Sereme's buttocks to Det. Kirkby's view.

Det. Kirkby was justified in conducting the search based upon the unconventional location that Sereme chose to hide his contraband.  Based upon the lawful pat down search and the detection of an item around Sereme's buttocks, Det. Kirkby was justified in conducting the search.  Det. Kirkby could have asked Sereme to remove what he was concealing but had Sereme refused, the search would have been frustrated.

Consequently, using the Court's analysis in *Bell*, the search of Sereme's person, including the area of his buttocks, was conducted in a constitutionally reasonable fashion under the circumstances.

### G.   The Affidavits In Support Of The Applications Seeking Authorization To Intercept Communications Establish Probable Cause Independent Of The Fruit Of The December 20, 2010 Traffic Stop.

Even if the Court were to excise the paragraphs of the affidavits relating to the December 20, 2010 incident from consideration for a determination of probable cause,  there was additional probable cause for the Court to grant authorization to intercept the communications occurring over cellular telephone numbers (239) 384-1052 and (754) 244-3916[2].

---

[2] No communications were intercepted pursuant to the authorization to intercept communications of cellular telephone number (239) 321-1233, relating to Attachment C of the Defendant's Motion, therefore there is no basis for exclusion.  *See* 18 U.S.C. §2510(11)(defining

An application for a wiretap must be supported by the same probable cause necessary for a search warrant. *United States v. Nixon,* 918 F.2d 895, 900 (11th Cir. 1990). The probable cause determination is a "practical, common-sense decision" about whether the "totality of the circumstances" indicate that there is probable cause that the sought-for evidence will be obtained. *Id.* The information in support of probable cause should be sufficient enough that a determination can be made that the telephone number is being used in furtherance of unlawful activity. *United States v. Domme*, 753 F.2d 950, 954, FN 2, (11th Cir. 1985)(citing *United States v. Tehfe*, 722 F.2d 1114, 1118 (3rd Cir. 1983)). "A wiretap application need not provide probable cause of criminal activity for each person named in an application . . . ." *Domme*, 753 F.2d at 954, FN 2, (citing *United States v. Martin*, 599 F.2d 880, 884-85 (9th Cir. 1979)).

1.     **The Affidavit in Support of Interception of Communications Occurring On Cellular Telephone Number (239) 384-1052.**

A review of the affidavit in support of the interception of communications occurring on cellular telephone number (239) 384-1052 reveals minimal inclusion of the information related to the December 20, 2010 traffic stop or subsequent jail calls. Even if paragraphs 20, 21, 22, 29, and 29A, which discussed the December 20, 2010 incident and jail calls, were excised from the affidavit in support of the (239) 384-1052 interception application, there was independent probable cause for the authorization.

The affidavit contains background information provided by three separate confidential sources. Defendant's Motion, Attachment A, pp. 13-24. The background information discusses the involvement of Sereme and others in drug distribution activity in Lee County, Florida and

_____

an "aggrieved person" as one "who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."

elsewhere.  In the "Probable Cause for Target Telephone" section, the affidavit discusses recorded conversations between CS-3 and Defendant Rick Jean, who was using cellular telephone number (239) 384-1052.  *Id.* at 25 -28.  These recorded conversations took place between May and July 2011, and alone establish probable cause that cellular telephone number (239) 384-1052 was being used in unlawful activity.  As described, these conversations were of a criminal nature and involved the distribution of cocaine base.  With the exception of paragraph 29A, none of these conversations were the jail conversations sought to be suppressed by Sereme.  Therefore, there was independent probable cause for the Court to determine that cellular telephone number (239) 384-1052 was being used in unlawful activity.

> 2. **The Affidavit in Support of Interception of Communications Occurring On Cellular Telephone Numbers (239) 384-1052 and (754) 244-3916.**

A review of the affidavit in support of the interception of communications occurring on cellular telephone numbers (239) 384-1052 and (754) 244-3916 also reveals minimal inclusion of the information related to the December 20, 2010 traffic stop or subsequent jail calls.  Even if paragraphs 21, 22, and 23, which discussed the December 20, 2010 incident and jail calls, were excised from the affidavit, there was independent probable cause for the authorization.

The affidavit contains background information provided by three separate confidential sources.  Defendant's Motion, Attachment B, pp. 17-28.  The background information discusses the involvement of Sereme and others in drug distribution activity in Lee County, Florida and elsewhere.  In the "Intercepted Communications involving Target Telephone 1 and/or Target Telephone 2" section, the affidavit discusses recorded conversations of a criminal nature between cellular telephone number (239) 384-1052 and (754) 244-3916.  *Id.* at 28-40.  These were intercepted communications occurring over cellular telephone number (239) 384-1052, pursuant to

the Court's Order authorizing such interception.   These communications establish probable cause

that cellular telephone number (239) 384-1052 and (754) 244-3916 were being used in unlawful

activity.  As described, these conversations were of a criminal nature and involved the distribution

of cocaine base.  None of these conversations were the jail conversations sought to be suppressed

by Sereme.  Therefore, there was independent probable cause for the Court to determine that cellular

telephone numbers (239) 384-1052 and (754) 244-3916 were being used in unlawful activity.


WHEREFORE, based upon the above and foregoing reasons, the government respectfully

requests that the Court deny Sereme's Motion to Suppress on all grounds raised.

<div style="margin-left: 40%;">

Respectfully submitted,
ROBERT E. O'NEILL
United States Attorney


By:    <u>s/*Jesus M. Casas*</u>
JESUS M. CASAS
Assistant United States Attorney
Florida Bar No.  0152110
2110 First Street, Suite 3-137
Fort Myers, Florida 33901
Telephone: (239) 461-2200
Facsimile: (239) 461-2219
E-mail: jesus.m.casas@usdoj.gov

</div>

<u>United States v. Jude Sereme</u>           Case No. 2:11-cr-97-FtM-99SPC

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 23, 2012, I filed the foregoing with the Court which send notice of electronic filing to the following:

Russell K. Rosenthal
russ_rosenthal@fd.org

*s/ Jesus M. Casas*
Jesus M. Casas
Assistant United States Attorney